No. 24-10084

---

## United States Court of Appeals for the Fifth Circuit

---

ELIO CERKEZI;
CERKEZI ENTERPRISES L.L.C., doing business as EURO CAR TECH,

*Plaintiffs – Appellants*

v.

City of Arlington,
Rick Ripley, Abelardo Gomez III, Zac Scott

*Defendants - Appellees*

---

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

---

APPELLANTS' BRIEF

---

Warren V. Norred
**Norred Law, PLLC**
Texas Bar Number: 24045094
warren@norredlaw.com
515 E. Border St.
Arlington, TX 76010
(817) 704-3984 (Office)
(817) 524-6686 (Fax)
*Counsel for Appellants*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Appellants:**
Cerkezi Enterprises L.L.C. d/b/a Euro Car Tech,
Elio Cerkezi

Appellants' Counsel
Warren Norred (TX Bar No. 24045094), warren@norredlaw.com
Norred Law, PLLC; 515 E. Border Street; Arlington, Texas 76010
Tel: (817) 704-3984; Fax: (817) 524-6686

**Appellees:**
City of Arlington
Rick Ripley
Abelardo Gomez III
Zac Scott

Appellees' Counsel
Cynthia Withers (TX Bar No. 00791839), cynthia.withers@arlingtontx.gov
Joshua Skinner (TX Bar No. 24041927), joshua.skinner@arlingtontx.gov
City of Arlington, City Attorney's Office
Post Office Box 90231, MS 63-0300
Arlington, Texas, 76004-3231
Telephone: (817) 459-6878
Facsimile: (817) 459-6897

/s/Warren Norred
Attorney of record for Appellants

**STATEMENT REGARDING ORAL ARGUMENT**

According to 5th CIR. R. 28.2.3, the Court would benefit from oral argument in this case. Counsel for both parties, if given the opportunity to appear before the Court, will be able to answer any questions the Court may have and expand on any reasoning that requires additional clarification.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................................ i

STATEMENT REGARDING ORAL ARGUMENT................................................................ ii

Table of Contents ........................................................................................................... iii

Table of Authorities ........................................................................................................ iv

Statement of Jurisdiction.................................................................................................. v

Issues Presented ............................................................................................................. vi

Statement of the Case ...................................................................................................... 1

     I.  Factual Background ............................................................................................. 1

     II. Procedural Background........................................................................................ 3

Standard of Review.......................................................................................................... 3

Summary of the Argument................................................................................................ 3

Argument ........................................................................................................................ 4

     I.  Appellants have a property interest in operating their major auto repair business, protected by constitutional due process and the takings clause. ................................ 4

     II. The district court erred by dismissing Appellants' suit because they stated a plausible Fourteenth Amendment due process claim. ........................................... 11

     III. The district court erred by granting the motion to dismiss because Appellant stated a plausible United States Constitution takings claim.............................................. 16

Conclusion .................................................................................................................... 18

Certificate of Service and Compliance ........................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Burson*, 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971) .......................... 11, 12

*Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971) .............. 11, 12

*Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012)............................................. 12, 13

*City of Amarillo v. Stapf*, 101 S.W.2d 229 (Tex. [Comm'n Op.] 1937)........................................ 9

*City of Fort Worth v. Park*, No. 07-10-0279-CV,
    2011 Tex. App. LEXIS 5725, at *15-16 (Tex. App.—Amarillo July 26, 2011, no pet.) ........ 14

*City of Houston v. Carlson*, 393 S.W.3d 350, 357 (Tex. App.-Houston [14th Dist.] 2009) ........ 12

*TXI Operations, LP v. City of McKinney* Civ. Action No. 4:20-cv-353,
    2023 U.S. Dist. LEXIS 5100, at *89 (E.D. Tex. 2023) ..................................................... 17, 18

*Davis v. City of Abilene* 250 S.W.2d 685, 687 (Tex. App.—Eastland 1952, *writ ref'd*) 7, 8, 10, 17

*Jabary v. City of Allen*, 547 F. App'x 600, 606 (5th Cir. 2013)........................................ 12, 13, 14

*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009). ................................................ 6

*Martin K. Eby Constr. Co. v. DART*, 369 F.3d 464, 467 (5th Cir. 2004) ...................................... 3

*Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893 (1976)............................................................ 13

*McWaters v. Fed. Emergency Mgmt. Agency*, 436 F. Supp. 2d 802, 814 n.21 (E.D. La. 2006) .. 12

*Mosley v. Tex. HHS Comm'n*, 593 S.W.3d 250, 266 (Tex. 2019) ............................................... 4-5

*Penn Cent. Transp. Co. v. City of N. Y.*, 438 U.S. 104, 124–25 (1978) ........................... 16, 17, 18

*Rosenthal v. Dallas*, 211 S.W.2d 279 (Tex. Civ. App.—Dallas 1948, writ ref'd n.r.e.)........ passim

*Swain v. Bd. of Adjustment of City of Univ. Park*,
    433 S.W.2d 727, 733 (Tex. App.—Dallas 1968, *writ ref'd n.r.e.*). ......................................... 10

**Rules**

Fed. R. App. Pro. 4 ....................................................................................................................... v

Fed. R. Civ. Pro. 12....................................................................................................................... 3, 14

**Statues**

28 U.S.C. § 1291............................................................................................................................ v

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal because the district court entered a final judgment disposing of all parties and claims, permitting parties to immediately appeal under Fed. R. App. Pro. 4 and 28 U.S.C. § 1291.

# ISSUES PRESENTED

1. Under the Due Process and Takings Clauses of the U.S. Constitution, do Appellants have a property interest in operating their nonconforming major auto repair business when the use existed prior to the Building Code, Appellant has received permission from the City, substantially invested in upgrades, improvements, and renovations to the property, operated without incident for four years, and the city has no ostensible basis for declining to renew the Certificate of Occupancy?

2. Under the Due Process Clause of the U.S. Constitution, did the district court err by granting Appellee's motion to dismiss when the City unilaterally amended its zoning and building code, clearly implicating Appellants' property interests without imputation of actual or constructive notice to Appellants?

3. Under the takings clause of the U.S. Constitution, did the district court err by finding a failure on Appellant's part to properly state a claim where Appellant pleaded a vested property right arising from a combination of prior approval, use, and occupation over a course of years, verbal acquiescence by city personnel, and the absence of any rational policy grounds outside of caprice for denial of renewal of Appellants' Certificate of Occupancy?

## STATEMENT OF THE CASE

### I.    Factual Background

Appellant Cerkezi is the owner of Appellant Cerkezi Enterprises L.L.C., d/b/a Euro Car Tech, a luxury auto repair and sales business in Arlington, Texas. ROA.26.

In 2018, Appellant Cerkezi wanted to move his business from Fort Worth to the City of Arlington ("City"). ROA.26. Appellant Cerkezi moved his operation to 1850 Park Springs Blvd, Arlington, Texas, 76013 ("Property"), where  a repair facility operating under the name "Hand Two Hand Auto" had already been performing major auto repair for years. ROA.26. Appellant Cerkezi called the City about operating on the premises of the Property and received confirmation from the City Staff that he could operate his major auto repair and used luxury car sales on the Property. ROA.26. In January of 2018, Appellants leased the Property with a five-year lease and option for a five-year extension. ROA.26. Appellant Cerkezi then approached the City, still in 2018, with the lease, and acquired a Certificate of Occupancy ("CO") for major auto repair. Cerkezi was told he did not need used car sales to be listed on the CO. ROA.26.

From 2018 to 2022, Appellants operated the major auto repair and used car sales business and spent significant financial and personnel resources in cleaning up and improving the Property. ROA.26. While trying to renew his dealer's license, Appellant discovered that the State of Texas had changed its car dealer regulations

to require the phrase "used car sales" to be written on the CO as an allowable use, a change from previous regulations. ROA.26. When Appellant Cerkezi went to the City to update his CO so that it would comply with state law, the City's staff determined that the original CO from 2018 was issued in error, as the zoning for the Property did not allow heavy auto repair or sales. ROA.26. Rather than fight the staff on the matter, Appellant Cerkezi began to go through the rezoning process to add both uses to the Property. ROA.26. The City Council on May 8th, 2022 voted to not change the current zoning classification of the Property. ROA.26. However, the City Council did not vote to eliminate the nonconforming use or rescind the CO. ROA.26.

The next day, Appellants' CO was unilaterally amended by Appellee Rick Ripley without any notice to Appellants. ROA.27. Appellant Cerkezi continued to operate his major auto repair business and began receiving citations. One citation stated "apply for the necessary Certificate of Occupancy or vacate the property". ROA.27. The City did not inspect the Property between 2018 and the May 8th, 2022, meeting. ROA.27. Appellants will have to close the business or breach their lease and relocate if they are not allowed to operate a major auto repair business at that location. ROA.27.

The City of Arlington's "Construction" Chapter of the Code of the City of Arlington, Texas, 1987, as amended, Article I, Building Code, Sections 1.01 through 1.05 was approved on November 1st, 2022. ROA.127-139.

## II.    Procedural Background

Appellants filed their Original Complaint in the Northern District of Texas on September 28, 2023. ROA.7. Appellee filed its response on October 24, 2023. Appellants filed their reply on November 13, 2023. ROA.220. Appellee filed its Motion to Dismiss on November 22, 2023. ROA.245. Appellants filed their response on January 2, 2024. ROA.278. Appellee filed its reply on January 16, 2024. ROA.282.

The district court entered its Final Judgment on January 24, 2024, dismissing Appellants' claims. ROA. 296. The district court also provided a Memorandum Opinion & Order explaining its decision. ROA.285.

Appellants filed their Notice of Appeal on February 1, 2024. ROA.297.

## STANDARD OF REVIEW

The Fifth Circuit reviews the grant of a Rule 12(b)(6) motion to dismiss *de novo*. *Martin K. Eby Constr. Co. v. DART*, 369 F.3d 464, 467 (5th Cir. 2004).

## SUMMARY OF THE ARGUMENT

Appellants contend that the district court erred in dismissing Appellants' suit because it failed to accept all well-pleaded facts as true and properly construe them in favor of Appellants, whose property interest deserves constitutional due process and protection from takings.

## ARGUMENT

This Court should reverse the district court and remand because Appellants have a property interest in their major auto repair business and their due process rights was violated.

**I.      Appellants have a property interest in operating their major auto repair business, protected by constitutional due process and the takings clause.**

The district court dismissed Appellant's federal claims by concluding in error that Appellant acquired no property rights during his four years of operating his major auto repair business. ROA.288-300. However, the court erred because the nonconforming use existed prior to the enactment of the sections of the Building Code on which Appellee predicates its citations. As this Court surely is aware, property rights are determined by state law, and Appellants have vested property rights in their original CO and major auto repair business operations. ROA.26, 127. In Texas, the state cannot trivially give advice and then disclaim that advice:

> The court also noted that "[l]aws under which (administrative) agencies operate prescribe the fundamentals of fair play,"; and that "some forms of erroneous advice are so closely connected to the basic fairness of the administrative decision making process that the government may be estopped from disavowing the misstatement." Concluding that the plaintiffs were "denied an effective right of appeal," the court admonished: "To say to these appellants, '**The joke is on you. You shouldn't have trusted us**,' is hardly worthy of our great government."

*Mosley v. Tex. HHS Comm'n*, 593 S.W.3d 250, 266 (Tex. 2019) (cleaned, bolded).

The Court's analysis focused on Appellant's Certificate of Occupancy, which was unilaterally amended by the City. This unilateral amendment clearly implicated Appellants' property and due process rights because Appellants lacked actual or constructive knowledge of the amendment and cannot credibly be said to have knowingly waived their due process rights. ROA.288-300. The district court did not deign to address the other property interests pled by Appellants in this case, e.g. the property interest in settled rights to their major auto repair business. ROA.16, 288-300. Further, the district court ignored evidence that shows Appellants were authorized to conduct major auto repair services and used car sales at the Property including, most damningly, the wording on the city-issued CO stating that the Property is in compliance, and Appellants' sworn testimony, showing that the City granted Appellant authorization to run his business for four years and subsequently revoked permission absent any credible legal or policy basis. ROA.26-30, 288-300.

Appellants do not contest that municipalities and zoning boards have discretion in awarding certificates of occupancy, however, discretion does not cover caprice, or unbridled error, as forbidden by *Mosley*. *Id*. The City's brazen disregard for elementary due process protections, coupled with its failure to articulate any policy rational for its reversal of position on the zoning of Appellant's business, evinces a profound disregard for Appellants' constitutional rights and fails to meet the most basic threshold for sound public administration.

The district court quotes the CO's text: "issuance of a Certificate of Occupancy shall not be construed as an approval of a violation of the provisions of this code or of other ordinances of the jurisdiction." ROA.31, 290. However, the district court's selective quotation omits critically relevant language:

> ***The above property/structure/tenant space has been inspected for conformance with the City of Arlington's building codes and zoning ordinance and is found to be compliant.*** No change in the occupancy, occupancy or use may occur unless a new Certificate of Occupancy is obtained. The issuance of this Certificate of Occupancy may not be construed as an approval of violation of the ordinances of the City of Arlington.

ROA.31, 290. (emphasis added).

Appellants assert that the CO's catch twenty-two language prevents dismissal based on Rule 12(b)(6). On one hand, the CO states that the property has been inspected and is in compliance with the zoning ordinances; on the other hand, it states that the issuance may not be construed as an approval of violations of the ordinances of the City. Because a Rule 12(b) motion to dismiss can only be granted when there is no basis for a claim, Appellants posit that dismissal cannot be based on picking language in a CO that is biased for dismissal when other language supports the non-movant, because assumptions in the complaint should be assumed true, even when doubtful in fact. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009).

The CO issued to Appellants clearly stated that the City inspected Appellant's tenant space and found the space itself and the use to which it was put to be compliant with the relevant city ordinances. ROA.31.

The district court goes on to find the City's alleged unilateral power to revoke Appellant's CO in the Building Code. Contrary to the district court's ultimate conclusion, the Building Code does not include any notice or hearing procedures for revoking a CO and should be considered as evidence that the City enjoys free reign to ignore due process requirements. It is the Building Code which outlines the procedures for acquiring a Certificates of Occupancy and states: "[i]ssuance of a Certificate of Occupancy shall not be construed as an approval of a violation of the provisions of this code or of other ordinances of the jurisdiction." ROA. 127-129. However, reliance on the building code is inapposite because, in the facts at bar, the nonconforming use existed prior to the enactment of the Building Code on November 1st, 2022, Appellants have vested property rights in their certificate of occupancy and major auto repair business operations.

The district court relies on *Davis v. City of Abilene* to suggest Appellants have no property rights in the CO or their major auto repair business. 250 S.W.2d 685, 687 (Tex. App.—Eastland 1952, *writ ref'd*). However, *Davis* is distinguishable from these facts because Appellant's nonconforming use was also performed by the previous occupants of the building. *Id. Davis* stands for the proposition that rights

become vested with previous similar nonconforming uses by the previous occupant.

Indeed, the *Davis* court explicitly elucidates this principle:

> The Rosenthal case differs essentially from the instant case. In that case the permit was issued to Rosenthal for the operation of a cold storage plant, including meat curing, based upon a specific finding of fact by the building inspector of the City that such non-conforming use existed prior to the time of the enactment of the City's ordinance. The finding was supported by substantial evidence. No appeal was prosecuted by either city officials or interested individuals. The court held that the action of the building inspector became, in a sense, res adjudicata and that the city was estopped from revoking the permit. If the business of a cold storage plant, including the storage and curing of meat, was operated on the property prior to the enactment of the zoning ordinance, the rights of the owners of such property to operate that business or a similar business had become vested. When Rosenthal bought the property he acquired this vested right.

*Davis*, 250 S.W.2d at 688, citing *Rosenthal v. Dallas*, 211 S.W.2d 279 (Tex. Civ. App.—Dallas 1948, writ ref'd n.r.e.).

The district court quotes *Davis,* but ignores the comparison to *Rosenthal*, which distinguishes the *Davis* holding on which the district court relies, even though it was discussed and distinguished by Appellants. ROA.226-228.[1]

The occupant prior to Appellant had a CO for major auto repair granted on March 12, 2015. ROA.9, 30. The CO issued to the prior occupant and Appellants'

---

[1] The *Rosenthal* opinion reviews an appeal from *a full trial* that involved nuisance claims, a failure to work in the administrative process, and termination of a non-conforming use. Its clear teaching includes, "The defense of equitable estoppel is thereby interposed, in that issuance of permit, following a full disclosure of the use to be made of the premises, reliance on the permit in the making of improvements, and long operation of business without complaint by City or interveners, resulted in vested rights of which he could not be deprived by the attempted revocation."*Rosenthal v. Dallas*, 211 S.W.2d at 286. (Tex. Civ. App.—Dallas 1948, writ ref'd n.r.e.).

CO both state that the property is in compliance with zoning regulations. ROA.29-30. The City's citations to Appellant rely on the Building Code, which became effective on November 1, 2022, years after their CO was issued. ROA.37, 127-139. Analogously to *Rosenthal*, Appellants acquired vested rights in operating their major auto repair business because the nonconforming use existed prior to the promulgation of the City's Building Code, and in facts superior to *Rosenthal*, Appellants never changed use of the property. ROA.9, 26-32, 37, 7-77, 127-139.

The district court attempts to buttress its flawed analysis by relying on *City of Amarillo v. Stapf*, 101 S.W.2d 229 (Tex. [Comm'n Op.] 1937). However, this case is distinguished because the plaintiff, *City of Amarillo,* did not act on the City's permission, nor did the plaintiff begin business or invest into the location. By contrast, in the facts at bar, Appellant did receive permission from the City and operated for four years without protest from the City or its agents, a continued use indisputably going back to 2015. ROA.30. Additionally, Appellants poured significant financial resources into the property in reliance on the City-issued authorization that they could legally operate. ROA.26-29. The district court's reliance on *Stapf* is even more puzzling because the present case involves a nonconforming use that existed prior to the adoption and promulgation of the Building Code. Appellant clearly acquired vested rights in the nonconforming use. ROA.9, 26-32, 37, 127-139. *See Rosenthal,* 211 S.W.2d at 279.

*Swain v. Bd. of Adjustment of City of Univ. Park* is also not a reliable guide given the facts at issue. 433 S.W.2d 727, 733 (Tex. App.—Dallas 1968, *writ ref'd n.r.e.*). *Swain* delt with a variance appeal, which is not an issue in this case. Here, Appellants received the City's permission, invested in the property, and operated their major auto repair business for four years without any indication that he was in violation of any City ordinances. ROA.26-28. Further, Appellants acquired vested rights in operating their major auto repair business because the nonconforming use existed prior to the time of the City's Building Code. ROA.9, 26-32, 37, 127-139. *See Rosenthal,* 211 S.W.2d at 279.

*City of Amarillo, Swain,* and *Davis* address COs issued and revoked, but none of those cases address Appellant's situation. Specifically, none of those cases deal with a preexisting nonconforming use. The subsequent enactment of the City's Building Code, years later, does not abnegate Appellants' vested rights. After receiving permission, Appellants expended significant time and money upgrading the property and operated the business for four years without protest from the City. ROA.26-28. The district court's analysis does not fully address Appellant's property right claims. This case should be governed by *Rosenthal*: the Appellant has vested rights in his nonconforming use, which cannot be taken without compensation. *Rosenthal,* 211 S.W.2d at 279.

Because the district court erred in its analysis and did not accept all the well-pleaded facts for Appellants' claims regarding their property rights in their CO and their settled rights in operating the major auto repair business and used car sales, the Court erred and its dismissal according to 12(b)6 should be reversed. Consequently, Appellants have stated a plausible claim regarding their property rights.

## II. The district court erred by dismissing Appellants' suit because they stated a plausible Fourteenth Amendment due process claim.

The district court stated that because the May 8th, 2022, meeting was attended by Appellant and the meeting ended in the City declining to update the zoning, due process was satisfied as applied to Appellant. ROA.288-293. However, the facts and case law do not support the district court's reasoning. Appellant has stated a plausible claim that the May 8th meeting did not satisfy the notice and comment due process requirements for revoking his CO, and Appellant did not waive any due process rights. ROA.10-13, 16, 26-28, 224. The district court ignored the actual merits of the hearing and the well-pleaded facts that Appellants did not waive their due process rights in regard to their revoked CO. ROA.26-28, 224. It is hornbook law of due process that,

> A hearing is necessary "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971); *see also Bell v. Burson*, 402 U.S. 535, 542, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971)("It is fundamental that except in emergency situations . . .due process requires that when

a State seeks to terminate (a protected) interest . . ., it must afford 'notice and opportunity for hearing. . .").

*McWaters v. Fed. Emergency Mgmt. Agency*, 436 F. Supp. 2d 802, 814 n.21 (E.D. La. 2006). A generally valid notice procedure may fail to satisfy due process because of the circumstances of the individual. *See Boddie v. Connecticut*, 91 S. Ct. at 787 (stating, "No less than these rights, the right to a meaningful opportunity to be heard within the limits of practicality, must be protected against denial by particular laws that operate to jeopardize it for particular individuals.").

The present case will remind the Fifth Circuit of the Supreme Court's instruction regarding due process claims in similar facts:

> Texas law finds a property interest where an entity "has a legitimate claim of entitlement that is created, supported, or secured by rules or mutually explicit understandings." *City of Houston v. Carlson*, 393 S.W.3d 350, 357 (Tex. App.-Houston [14th Dist.] 2009); *see also Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012) ("Privileges, licenses, certificates, and franchises . . . qualify as property interests for purposes of procedural due process."). Jabary's Certificate was "essential in the pursuit of a livelihood." *Bell v. Burson*, 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971). "[O]nce issued, a license or permit cannot be taken away by the State without due process." *Bowlby*, 681 F.3d at 220 (citing *Bell*, 402 U.S. at 539).

*Jabary v. City of Allen*, 547 F. App'x 600, 606 (5th Cir. 2013) "Due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. Generally, 'meaningful time' means prior to the deprivation of the liberty or property right at issue." *Id.*

Because *Jabary* is so instructive to the present case, this protracted excerpt is

provided for the Court's review:

> Whether due process is provided to an individual depends upon the protections a particular situation demands. The Supreme Court requires the consideration of three factors in determining whether proper procedural protections were afforded. *Mathews*, 424 U.S. at 321. First, a court evaluates "the private interest that will be affected by the official action;" second, "the risk of an erroneous deprivation of such interest through the procedures used, and [the] probable value, if any, of additional procedural safeguards;" and third, "the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id*.

> In *Bowlby*, our court recently applied the *Mathews* factors to an almost identical factual situation. 681 F.3d at 221. Bowlby was issued permits by the Aberdeen Planning and Zoning Board to operate a "Sno Cone" hut inside Aberdeen city limits. *Id*. at 218. Two months after issuance, the Board met and decided to revoke the permits it had given Bowlby. *Id*. Bowlby was not informed of the meeting, nor was she informed that the Board would be reviewing her permits. *Id*. The day after the meeting, a city building inspector informed Bowlby that since her business "did not conform to the laws and regulations of the City[,]" she had to immediately close it because her permits had been revoked. *Id*. Applying the first *Mathews* factor, the court held that Bowlby had a private interest in her ability to operate her business. *Id*. at 221. Second, the city had not provided "any process prior to revoking Bowlby's permits, which increase[d] the risk of an erroneous deprivation[,]" thereby proving that "any procedural safeguards would [have been] highly valuable." *Id*. Third, we further concluded that "providing some sort of predeprivation procedure would [not have been] overly burdensome." *Id*. After application of the *Mathews* factors, due process, "[i]n a situation such as Bowlby's . . . demand[ed] more than no hearing at all." *Id*. We reversed the district court's Rule 12(b)(6) dismissal of Bowlby's procedural due process claim.

> Notwithstanding the magistrate's conclusion that Jabary failed adequately to plead a deprivation of due process, we hold that he

adequately pled such a claim as to two of the individual defendants. Jabary's Second Amended Complaint alleges that the City deprived him of his right to use of the Certificate of Occupancy "without due process or opportunity to be heard." He alleges that the City is a state actor, that each of the individual defendants held City positions, and that the City and its actors neither provided notice of its intent to revoke his Certificate, nor held any proceeding that he could attend before his Certificate was revoked. Jabary's allegations create a reasonable inference that his procedural due process rights were violated, fulfilling the plausibility standard for pleading under Iqbal. Questions remain with respect to which individual defendants he adequately pled a violation of his procedural due process rights.

*Id.* at 606-07.

Texas law is equally clear on this point as outlined in *City of Fort Worth v. Park*, No. 07-10-0279-CV, 2011 Tex. App. LEXIS 5725, at *15-16 (Tex. App.—Amarillo July 26, 2011, no pet.) (The due process clause in our state constitution requires the same level of due process as the federal constitution.) The case shows that whether due process was inadequate during a hearing despite participation by Appellant is a fact-specific analysis:

"interpreting the evidence in favor of the nonmovant, Park has failed to prove as a matter of law that he is entitled to summary judgment on his due process issues of inadequate notice and right to confrontation because fact issues remain, i.e., whether notice was inadequate despite Park's full participation in the afternoon hearing, whether Park waived any alleged due process violations by not objecting during the afternoon hearing, whether there is evidence that the Chairman's admonition was insufficient to limit the Commission's decision-making to the evidence presented in the afternoon hearing and, if so, whether Park can establish any harm or prejudice to his substantial rights by not being able to cross-examine the witnesses who testified at the morning hearing."

*Id.* (The appeals court reversed summary judgment in favor of Park, demonstrating even that summary judgment is going to be inappropriate in these fact-intensive evaluations, and thus unlikely prospects for a Rule 12(b)(6) dismissal.

For purposes of this case and the 12(b)(6) standard, taking all facts as true in favor of Appellant, Appellants have clearly stated a plausible claim that the May 8th, 2022, meeting did not satisfy notice and comment due process for revoking Appellants' CO, and Appellants did not knowingly waive any due process rights. ROA.9-12, ¶16-26. It should be up to the fact finder to decide whether the meeting satisfied due process; the district court erred by imposing its own judgment over Appellants' well pled facts. ROA.9, 26-32, 37, 7-77, 127-139, 291-293.

Further, as discussed in Section I of this Brief, Appellants have vested property rights in their CO and nonconforming use that existed prior to the enactment of the City's Ordinances. *Rosenthal,* 211 S.W.2d at 279. Though the City did not vote to add requested uses to the Planned Development, that is a separate and distinct legal issue which does not touch the question of whether the City provided due process regarding taking Appellants' vested property rights in the CO and operating his major auto repair business.

The district court erred by granting Appellee's motion to dismiss by disregarding Appellants' well-pleaded facts in favor of the Court's own assumption that the city council's meeting satisfied due process for the purposes of revoking

Appellants' CO, though no vote to revoke the Appellants' CO was made. This Court will find nowhere in the record where the City Council has argued or shown that non-conforming uses of property may be summarily forced to close, even when all parties know that the property is non-conforming. ROA.9-12, 26-28. This Court should reverse the district court's decision to grant dismissal.

## III.    The district court erred by granting the motion to dismiss because Appellant stated a plausible United States Constitution takings claim.

The district court erred in its analysis regarding Appellants' takings claim. The district court continued its previous analysis erring in its assumption that Appellants' CO was not a valid property interest, therefore nothing could have been "taken". ROA.293. However, as discussed, Appellants have shown they have plausibly stated a vested right in their CO and in operating their major auto repair business because the nonconforming use existed prior to the Building Code. *Rosenthal,* 211 S.W.2d at 279. ROA.9, 26-32, 37, 7-77, 127-139.

The district court cites the Supreme Court of the United States' holding in *Penn Central* where the court "dismissed 'taking' challenges on the ground that, while the challenged government action caused economic harm, it did not interfere with interests that were sufficiently bound up with the reasonable expectations of the claimant to constitute 'property' for Fifth Amendment purposes." *Penn Cent. Transp. Co. v. City of N. Y.*, 438 U.S. 104, 124–25 (1978). The district court's analysis of the facts shows that the district court assumed that Appellants'

expectations were based on the CO, and did not include the four years of operations, the years of operations by the property's previous occupant, or the actual permission given by City staff, as pleaded by Appellant. ROA. 26-32, 289, 293.

The district court erred by substituting its own version of events in place of Appellants' well-pled facts and in concluding that, because Appellants allegedly has no CO, there is no taking. ROA.289, 293. However, a revocation of a CO is not dispositive as to whether property rights are violated. *Davis*, 250 S.W.2d at 688 citing *Rosenthal v. City of Dallas*, 211 S.W.2d at 279. In this case, Appellants acquired a vested property rights in continuing the nonconforming major auto repair use that was present prior to the enactment of the Building Code. *See id.* ROA.9, 26-32, 37, 7-77, 127-139.

Appellants pled that they had settled expectations to operate their major auto repair business based on the City's permission as evinced by the granted CO, and the significant financial investment by Appellant Cerkezi into the property, and the four years of operation without any issue. This case is analogous to the *Penn Central* taking analysis taken in the Eastern District of Texas:

> To be sure, the City can hardly argue that there is definitively no economic impact when the reality is that TXI will be forced to shut down a multi-million-dollar business. . . Likewise, the City can hardly contend that there is not a question of whether the amortization and rezoning interfered with TXI's investment-backed expectations when the City knew TXI had plans for expansion, or at the very least to continue profitably operating.

*TXI Operations, LP v. City of McKinney*, Civ. Action No. 4:20-cv-353, 2023 U.S. Dist. LEXIS 5100, at *89 (E.D. Tex. 2023).

As in *TXI,* Appellants in this case had a nonconforming use prior to the enactment of the ordinance. *Id. Rosenthal,* 211 S.W.2d at 279; ROA.9, 26-32, 37, 7-77, 127-139. Appellants will have to shut down, terminate their employees, and halt provision of services to the customer base they have built up over years through stellar work because the City has arbitrarily decided to interfere with Appellants' investment-backed expectations by denying renewal of the CO, when the City knew full well that Appellants had plans to continue to profitably operate and serve the community. *Id.* ROA.9, 26-32, 37, 7-77, 127-139. Appellees interfered with Appellants' interests that were sufficiently bound up with the reasonable expectations of Appellant to constitute "property" for Fifth Amendment purposes. Appellants have adequately pleaded a plausible Fifth Amendment regulatory claim. *Penn Cent.* 438 U.S. at 124–25; *Rosenthal,* 211 S.W.2d at 279. ROA.9, 26-32, 37, 7-77, 127-139. The district court should be reversed.

## CONCLUSION

This Court should reverse the district court's dismissal of Appellants' claims because Appellants' claims are plausible to survive Rule 12(b)(6) dismissal and remand the case as appropriate.

Respectfully submitted,

*/s/ Warren V. Norred*
Warren V. Norred, Texas Bar Number: 24045094, warren@norredlaw.com
**Norred Law, PLLC**
515 E. Border St.; Arlington, TX 76010
(817) 704-3984
COUNSEL FOR APPELLANTS

## CERTIFICATE OF SERVICE REQUIRED BY
## FED. R. APP. P 25(D)

I certify that on March 18, 2024, the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure on all registered counsel of record, and has been transmitted to the Clerk of the Court, including:

Joshua Skinner, TX Bar No. 24041927, joshua.skinner@arlingtontx.gov
Cynthia Withers, TX Bar No. 00791839, cynthia.withers@arlingtontx.gov

/s/ Warren V. Norred
Warren V. Norred

## CERTIFICATE OF COMPLIANCE WITH
## FED. R. APP. P. 32(G)(1) AND 5TH CIR. R. 32.3.
## (SEE FED. R. APP. P. 28(A)(10))

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7), which limits a principal brief because, excluding the parts of the document exempted by Fed. R. App. P. 32(f); this document contains 5911 words and does not exceed 30 pages.

2. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportional-spaced typeface using Microsoft Word with a 14-point Times New Roman font.

/s/ Warren V. Norred
Warren V. Norred