No. 24-10084

# United States Court of Appeals for the Fifth Circuit

Elio Cerkezi, Cerkezi Enterprises L.L.C., doing business as Euro Car Tech,

*Plaintiffs – Appellants*

v.

City of Arlington,
Rick Ripley, Abelardo Gomez III, Zac Scott

*Defendants - Appellees*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

APPELLANTS' REPLY BRIEF

Warren V. Norred
**Norred Law, PLLC**
Texas Bar Number: 24045094
warren@norredlaw.com
515 E. Border St.
Arlington, TX 76010
(817) 704-3984 (Office)
(817) 524-6686 (Fax)
*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................2

TABLE OF AUTHORITIES..........................................................................................3

I.   ARGUMENT..........................................................................................................4

   A.   The District Court incorrectly dismissed Appellants' Due Process claim. ...4

      i.   Appellants were not provided with all the due process to which they were constitutionally entitled................................................................................4

      ii.  The district court incorrectly held that an erroneously issued certificate of occupancy cannot create a constitutionally protected property interest. ............7

      iii. Appellants did not forfeit the argument that they possess a constitutionally protected property interest as a "nonconforming use."....................................12

   B.   The District Court incorrectly dismissed Appellants' Takings claim..........13

II.  CONCLUSION ....................................................................................................17

CERTIFICATE OF SERVICE REQUIRED BY ....................................................18

CERTIFICATE OF COMPLIANCE WITH ...........................................................18

# TABLE OF AUTHORITIES

*Bowlby v. City of Aberdeen*, 681 F.3d 215 (5th Cir. 2012) ..........................................9
*City of Amarillo v. Stapf*, 101 S.W.2d 229 (1937) ......................................................7
*City of Fort Worth v. Park*, No. 07-10-0279-CV, 2011 Tex. App. LEXIS 5725
 (Tex. App.—Amarillo July 26, 2011, no pet.) ...............................................5, 6
*City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770 (Tex. 2006)............15
*Davis v. City of Abilene*, 250 S.W.2d 685
 (Tex. Civ. App.—Eastland 1952, writ ref'd) ...................................................9
*Hormel v. Helvering*, 61 S. Ct. 719, 721 (1941) ........................................................12
Jabary v. City of Allen, 547 F. App'x 600, 606 (5th Cir. 2013) ..............................6, 9
*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).........................................................5
*Mosley v. Texas Health and Human Services Commission*,
 593 S.W.3d 250 (Tex. 2019) ........................................................................8, 16
*Penn Central Transp. Co. v. City of New York*, 438 U.S. 104 (1978)............... 12, 16
*Rosenthal v. Dallas*, 211 S.W.2d 279
 (Tex. Civ. App.—Dallas 1948, writ ref'd n.r.e.)..............................................13
*Singleton v. Wulff*, 428 U.S. 106 (1976)....................................................................12
*Swain v. Bd. of Adjustment of City of University Park*, 433 S.W.2d 727
 (Tex. Civ. App.— Dallas 1968, writ ref'd n.r.e.) ............................................9
*TXI Operations, LP v. City of McKinney,* No. 4:20-cv-353, 2023 WL 161942
 (E.D. Tex. January 11, 2023) ...........................................................................15
*United States v. Clarke*, 445 U.S. 253 (1980)...........................................................12
*United States v. Olano*, 507 U.S. 725 (1993)............................................................12

# I. ARGUMENT

**A. The District Court incorrectly dismissed Appellants' Due Process claim.**

    *i. Appellants were not provided with all the due process to which they were constitutionally entitled.*

Appellees' contention that the district court correctly dismissed Appellants' due process challenge fails to appreciate the constitutional guarantees at the heart of this dispute. The issuance of a corrected certificate of occupancy ("CO"), following the City's discovery of an alleged error is hardly a remedy for the procedural due process violations experienced by Appellants. The crux of Appellants' argument is not merely the outcome of the administrative process but the fairness and adequacy of the procedures leading to that outcome.

The Appellees assert that Appellants received "ample due process" through public hearings before the Planning and Zoning Commission and the City Council. However, this argument oversimplifies the requirements of procedural due process under the Fourteenth Amendment and mischaracterizes the public hearing which occurred. Due process is not a box-checking exercise where just any form of hearing suffices. *See City of Fort Worth v. Park*, No. 07-10-0279-CV, 2011 Tex. App. LEXIS 5725, at *15-16 (Tex. App.—Amarillo July 26, 2011, no pet.); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The hearings must provide a "meaningful opportunity to be heard" which entails the ability to present evidence, argue the application of the law, and receive a fair and unbiased decision from the adjudicatory body. *Id.*

Moreover, the Appellees' reliance on the procedural steps taken—namely, the public hearings—ignores the substantive aspect of the due process violation alleged by Appellants. The City's unilateral action to revoke a previously granted certificate of occupancy, based on an after-the-fact determination of non-compliance, implicates a significant property interest without the requisite procedural safeguards. The hearings as described did not afford Appellants a genuine opportunity to challenge the City's retroactive enforcement action or to address the fundamental fairness of revoking the CO on which Appellants had relied in good faith in addition to the Appellees' assurances. ROA.26-37. *See Jabary v. City of Allen*, 547 F. App'x 600, 606 (5th Cir. 2013).

Additionally, the Appellees' argument fails to address the issue of notice and the opportunity to remedy any purported violation before the revocation of the CO. The principle that due process requires notice and an opportunity to rectify a situation before deprivation of a property interest is well-established. *Id.* The mere fact that hearings were held does not satisfy this principle if the hearings did not address the specific issue of the certificate's revocation and did not provide Appellants with a fair opportunity to contest the City's actions. *City of Fort Worth*, 2011 Tex. App. LEXIS 5725, at *15-16.

Finally, the argument that due process requires no more than the hearings provided is contrary to the essence of procedural due process, which is to protect

individuals from arbitrary governmental actions that deprive them of liberty or property interests. *Mathews*, 424 U.S. at 333; *City of Fort Worth*, 2011 Tex. App. LEXIS 5725, at *15-16; *Jabary*, 547 F. App'x at 606. The procedural safeguards required by due process must be tailored to the particular circumstances of the case and ensure that the affected party has a real opportunity to present its case and be heard in a meaningful manner. *Id.*

In light of the foregoing, the Appellees' argument that Appellants were afforded ample due process is without merit. The hearing never included a vote to revoke or eliminate a non-conforming use that had been ongoing for many years even before Appellants opened their shop. That question was not before the council.

The procedural deficiencies in the City's process, including the lack of a specific hearing on the revocation of the CO and the failure to provide adequate notice and an opportunity to cure, constitute a deprivation of Appellants' property interest without due process of law. ROA.26-28. *Id.* Not to mention the harassing citations that only began after the fact, many of which were unrelated to property use. ROA.48-49.[1] The district court's dismissal of Appellants' due process challenge should, therefore, be reversed.

---

[1] While not in the record, this Court can take judicial notice that fifteen citations have been issued to Appellant; only four relate to property. (See
https://www.municipalrecordsearch.com/arlingtontx/Cases - Citations: # 000866340-01; 000866340-02; 000866341-01;000866341-02;000866341-03;000871160-01;000871160-02;000871160-03;000871161-01; 000871162-01; 000871163-01; 000871163-02; 000871163-03;

### ii. The district court incorrectly held that an erroneously issued certificate of occupancy cannot create a constitutionally protected property interest.

In response to the assertion that the district court correctly held that an erroneously issued certificate of occupancy does not and cannot create a constitutionally protected property interest, it is crucial to distinguish the facts of Appellant's situation from those in *City of Amarillo v. Stapf*, 101 S.W.2d 229 (1937), and other cases cited. The argument against Appellants' due process claim overlooks differentiating details, particularly regarding the existence and recognition of a vested property interest and the procedural due process implications thereof.

Firstly, the reliance on *City of Amarillo* and similar cases fails to account for the distinct facts of Appellants' situation, where the nonconforming use existed prior to the enactment of the sections of the Building Code on which the City predicated its decision. *City of Amarillo,* S.W.2d at 229. ROA.26-32. This pre-existing use is a significant factor that distinguishes the present case from *City of Amarillo*, where the use was not previously established and recognized. *Id.* The Texas Supreme Court and various appellate decisions have long recognized the concept of vested rights, particularly where businesses operate under a certain zoning classification or with specific permits before changes in law or zoning ordinances. *City of Amarillo,*

---

000871164-01; 000871164-02.) Appellants were never issued a single citation before the March 8, 2022, meeting.

S.W.2d at 229; *City of Fort Worth*, 2011 Tex. App. LEXIS 5725, at *15-16; *Rosenthal v. City of Dallas,* 211 S.W.2d 279, 286-87 (Tex. Civ. App.—Dallas 1948, writ ref'd n.r.e.). In Appellants' case, the operation as a major auto repair business was a continuation of a nonconforming use that existed and ignored for multiple predecessors going back at least to 2012, each one apparently given deference before Appellants, thus creating a vested property interest. ROA.26-37.

Second, the principle that municipalities cannot issue permits in violation of zoning ordinances and that such mistakenly issued permits are void, even if generally sound, does not adequately address situations where the property owner has relied in good faith on the permits for years with such assurances from the City and a history of predecessors who were given the peace of government inattention. ROA.26-37. And if given the opportunity to perform discovery, Appellants may well be able to reach back before the zoning change was made, and thus fit exactly into the allowed exception. If nothing else, discovery should be allowed to determine how far back the property use extends.

In *Mosley v. Texas Health and Human Services Commission*, the Texas Supreme Court emphasized the importance of fair play in administrative decision-making and suggested that government may be estopped from disavowing erroneous advice or permits when there has been detrimental reliance. 593 S.W.3d 250, 266 (Tex. 2019). Appellants relied on the City's issuance of a CO and operated their

business in good faith, investing significant resources based on this reliance. ROA.26-32. This reliance, coupled with the operation's history and the City's initial recognition of its legality, supports Appellants' claim to a protected property interest.

Furthermore, the procedural due process concerns in this case are paramount and distinguish it from the cases cited by the district court. The unilateral revocation of a previously granted CO, especially without adequate notice and opportunity to seek simply the remedy of a recognition as a non-conforming use, contravenes the fundamental principles of due process. *See Jabary*, 547 F. App'x at 606. Both *Jabary* and *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012) illustrate scenarios where due process protections were warranted due to the arbitrary revocation of COs. *Id.* Similarly, Appellants' situation calls for due process considerations given the lack of a meaningful opportunity to contest the revocation and the significant reliance interests at stake. ROA.26-32.

In the cases of *Davis v. City of Abilene*, 250 S.W.2d 685, 687 (Tex. Civ. App.— Eastland 1952, writ ref'd) and *Swain v. Bd. of Adjustment of City of University Park*, 433 S.W.2d 727, 733 (Tex. Civ. App.— Dallas 1968, writ ref'd n.r.e.), the courts held that a permit issued in violation of an ordinance was void and vested no rights in the permit holder. This principle emphasizes that if a municipal permit is granted contrary to the laws or ordinances in place at the time of issuance, it lacks legal validity, and the recipient of the permit does not gain any protected interests as a

9

result of the erroneous issuance, barring some exceptional condition. But even in *Davis*, the court took the time to distinguish that case from *Rosenthal,* which held that a city was estopped to revoke a permit when the buyer of a property was a successor to a previous user that was also nonconforming and predated a zoning change. *Id. Rosenthal,* 211 S.W.2d at 286-87. In the present case, the City asserts that a planned development ("PD") zoning restricting auto repair on the property to minor auto in 1996. Appellees' Brief at 19. However, this PD was not publicly known[2], and the City issued an unrestricted CO to Don's Total Car Care opened in 2002, and even when Hand 2 Hand Automotive took the location in 2015 the City issued a CO for major auto repair use. ROA.29-32.

The City has not alleged that it has ever enforced the restricted use on the subject property, and no discovery has been allowed to determine to what use the property was put between the zoning change in 1996 and the heavy auto use in 2002; it may be that the present case is exactly a *Rosenthal* exception, but unless the Court remands this case, this defense will never see the light of day, just as the PD restrictions themselves were not public for the more than 24 years between the PD's passage and the present dispute arose.

---

[2] The record of the March 8, 2022, hearing shows admission by Appellee City that the relevant zoning documents were not open to the public and major auto repair was not a distinguishing category until 2015.
https://arlingtontx.granicus.com/player/clip/4079?view_id=9&redirect=true&h=75aaa377ef726f2139b3e2a57ec23f b9, 1:26:03 and 1:31:15 (last viewed May 8, 2024)

Thus, the use of *Davis* and *Swain* in the context of Appellants' case requires the Court to evaluate the situation as closer to *Rosenthal* or to *Davis*. In the Appellants' situation, the focus is not solely on the legality of the CO at the moment of issuance but also on the subsequent reliance and actions taken by the Appellants based on a belief in the permit's validity and on Appellee's initial acceptance of such use, combined with the reality that the PD that the City now relies on was so unimportant for the two decades prior that multiple predecessor auto repair facilities invested and thrived in the area without complaint or discovery of the secret PD that no one knew about, even the City staff, until Appellants came to the City in good faith to ensure proper operation.

Appellants argue that their reliance on the erroneously issued CO, their substantial investments based on this reliance, the previous decades of use by predecessors, the reality of secret zoning restrictions that was not viewable by the public, and the Appellee's initial acknowledgment of their business operation under the permit, create a vested right or a constitutionally protected property interest. *Rosenthal,* 211 S.W.2d at 286-87.

This vested interest is argued to arise not from the mere possession of the certificate but from the equitable principles of reliance and the Appellees' actions which, in effect, legitimized the appellants' business operations up until the point of revocation. Thus, whereas *Davis* and *Swain* address the void nature of permits issued

in violation of ordinances without further considerations, Appellants' case encompasses a broader scope, incorporating elements of good faith reliance, vested rights, and the implications of procedural due process in the revocation of a CO that is only the last of a series the City issued. *Id.*

Furthermore, Appellants' argument introduces the concept of procedural due process violations, suggesting that the manner in which the certificate was revoked—without adequate notice, opportunity to remedy, or a fair hearing—constitutes a deprivation of their property interest without due process of law. This aspect of procedural fairness and the opportunity to contest governmental actions distinguishes Appellants' case from the straightforward application of ordinance violation in *Davis*. *See id.*

In summary, the district court's reliance on *City of Amarillo* and similar cases overlooks the critical distinctions present in Appellants' case, including the existence of a vested property interest arising from a pre-existing nonconforming use and the procedural due process implications of the City's actions. These distinctions warrant a reevaluation of Appellants' due process and property interest claims, underscoring the need for reversal of the district court's dismissal.

### iii. *Appellants did not forfeit the argument that they possess a constitutionally protected property interest as a "nonconforming use."*

Appellee argues that Appellants' have made arguments for the first time in appeal, specifically the issue of whether the major auto repair operations is a

constitutionally protected property interest, even as a nonconforming use. However, Appellants made this argument in the lower court; it was not forfeited.

Appellants made the argument that they have a constitutionally protected property interest in the major auto repair use in the lower court. ROA.7, 14 ¶37, ROA.15, ¶42; ROA.18-19, ¶¶56, 60; ROA.222, ¶¶6, 9; ROA.224, ¶13; ROA.225, ¶15; ROA.226, ¶16; ROA.228, ¶¶21, 22. Appellants did not forfeit this argument.

In the case of Appellants, the record indicates that the business operated as a major auto repair facility for years before any dispute regarding zoning arose. ROA.10-11, ¶22-23; ROA.26-37; ROA.224, ¶10-12. This longstanding use of the property for a particular purpose, which was allowed at its inception, underpins the argument that Appellants have a vested right in continuing their major auto repair operation as a nonconforming use. This vested right is a constitutionally protected property interest because it cannot be taken away or substantially altered without due process and just compensation under the Fifth and Fourteenth Amendments of the United States Constitution. *See Rosenthal,* 211 S.W.2d at 286-87; *Mosley*, 593 S.W.3d 250 (Tex. 2019).

In conclusion, Appellants did not forfeit their argument on appeal regarding the possession of a constitutionally protected property interest in its major auto repair use of the property.

**B. The District Court incorrectly dismissed Appellants' Takings claim.**

The district court's decision is fundamentally flawed due to two significant errors: firstly, it fails to grasp the nature and scope of a property interest under takings jurisprudence; and secondly, it misapplies precedent relating to nonconforming uses and the impacts of zoning regulations. These errors have led to a miscarriage of justice, which can only be remedied by a thorough review and reversal of the court's decision.

Firstly, the premise that Appellants lacked a property interest capable of being taken is fundamentally flawed. The district court's conclusion disregards the substantive legal protections afforded to property interests that arise not only from ownership but also from legitimate expectations and reliance on governmental authorizations such as certificates of occupancy. The Supreme Court in *Penn Cent. Transp. Co*., 98 S. Ct. at 2667, emphasized that:

> "'taking' jurisprudence does not divide property interests into 'discrete segments' and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole."

This holistic view of property interests underscores the error in the district court's narrow interpretation.

Moreover, the district court and the Appellees misapply the principles related to nonconforming uses. As discussed previously, the argument that Appellants' use of the property has "always been illegal" disregards the critical distinction between

a nonconforming use and an illegal use. Appellee's Brief at 24. Nonconforming uses are not inherently illegal but are uses that were established under prior regulations and are allowed to continue under specific conditions despite subsequent zoning changes. *See* Unified Development Code of the City of Arlington Texas, Chapter 11, Sections 11.2 (nonconforming uses) and 11.7 (illegal uses). The reliance on *Rosenthal*, S.W.2d at 279 and *TXI Operations, LP v. City of McKinney,* No. 4:20-cv-353, 2023 WL 161942 (E.D. Tex. January 11, 2023) is not misplaced. Both cases recognize the protection afforded to property owners and lessees under the doctrine of nonconforming use, which is a foundational principle in zoning and takings law.

The district court's reliance on *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770 (Tex. 2006), and similar cases, fails to appreciate the distinction between erroneously issued permits and the reliance on government action in the context of nonconforming uses. In the case of Appellants, the focus should not solely be on the issuance of the CO in error but on the legitimacy of Appellants' reliance on governmental actions and the substantial investments made based on that reliance. The principle of equitable estoppel, although not traditionally applied against municipalities in zoning cases, should not be disregarded when the property owner's or lessee's actions were taken in good faith reliance on the validity of government-issued permits. *See Mosley*, 593 S.W.3d at 266.

Additionally, the characterization of Appellants' operations as "always illegal" overlooks the substantive evidence indicating that the business operated under a belief of legality affirmed by the City itself and bolstered by the issuance of a CO and the lack of enforcement actions by the city for decades, and predecessors going back to at least 2002. ROA.26-37. This situation falls squarely within the ambit of a regulatory taking wherein the government's actions, including the retroactive application of zoning laws and the revocation of the CO, have significantly interfered with Appellants' investment-backed expectations, thereby constituting a taking requiring just compensation under the Fifth Amendment. *See Penn Central Transp. Co.*, 438 U.S. at 104. And as already stated, if discovery shows that heavy automotive repair was going on since 1996, then Appellants clearly should be provided a *Rosenthal* exception without any extension of that doctrine.

Appellants' reliance on governmental actions, the issuance of a CO, and its good faith investment in the property create a legitimate property interest that has been impermissibly taken through regulatory actions without the provision of just compensation. Therefore, the dismissal of the takings claim by the district court should be reversed, and Appellants' claim should be allowed to proceed to adequately address the substantive takings issue presented.

## II. CONCLUSION

This Court should reverse the District Court's dismissal of Appellants' claims because they should have survived a Rule 12(b)(6) challenge; and remand the case.

Respectfully submitted,

*/s/ Warren V. Norred*
Warren V. Norred, Texas Bar Number: 24045094, warren@norredlaw.com
**Norred Law, PLLC;** 515 E. Border St.; Arlington, TX 76010
(817) 704-3984
COUNSEL FOR APPELLANTS

# CERTIFICATE OF SERVICE REQUIRED BY
# FED. R. APP. P 25(D)

I certify that on May 8, 2024, the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure on all registered counsel of record, and has been transmitted to the Clerk of the Court, including:

Joshua Skinner, TX Bar No. 24041927, joshua.skinner@arlingtontx.gov

Cynthia Withers, TX Bar No. 00791839, cynthia.withers@arlingtontx.gov

<u>/s/ Warren V. Norred</u>
Warren V. Norred

# CERTIFICATE OF COMPLIANCE WITH
# FED. R. APP. P. 32(G)(1) AND 5TH CIR. R. 32.3.
# (SEE FED. R. APP. P. 28(A)(10))

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7), which limits a principal brief because, excluding the parts of the document exempted by Fed. R. App. P. 32(f); this document contains 3171words, excluding the cover page, tables, and corticates, and which relevant parts do not exceed 15 pages.

2. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportional-spaced typeface using Microsoft Word with a 14-point Times New Roman font.

<u>/s/ Warren V. Norred</u>
Warren V. Norred